117 So.2d 174

FIRST NATIONAL BANK OF MOBILE, Edwin C. Wilcox, doing buisness as Edwin C. Wilcox Company, and Harold Donald Percy,

v.

Lavada H. POPE.

1 Div. 823–825.

Supreme Court of Alabama.

Dec. 17, 1959.

Rehearing Denied Jan. 21, 1960.

Sam M. Johnston, Johnston, McCall & Johnston, Mobile, for appellant First National Bank.

Caffey, Gallalee & Caffey, Mobile, for appellant Wilcox.

Dan T. McCall, Jr., Mobile, for appellant Percy.

204

·Thornton & McGowin, Mobile, for appellee.

MERRILL, Justice.

Appeal from a decree sustaining demurrer to bill as amended and to cross-bills of respondents, Wilcox and Percy.

The original bill of complaint was filed by the First National Bank of Mobile. It alleged the procurement of money from the bank by Douglas H. Pope, deceased, by the exercise of fraud, and the investment by Douglas H. Pope of some of the money so fraudulently obtained in the payment of premiums on life insurance policies totaling $80,000, payable to his wife, Lavada H. Pope, the appellee; and also that some of the money was used in part payment of the purchase price of a homestead which Douglas H. Pope and Lavada H. Pope acquired as joint tenants and not as tenants in common (full title passed to Lavada H. Pope on the death of her husband under the survivorship clause in the deed).

The bill further alleged that all premiums since July 22, 1949, and all payments on homestead were paid from the monies fraudulently obtained by Pope. Some of the insurance policies were purchased before Pope had any financial dealings with appellants.

It is also alleged that Pope was engaged in the general brokerage business under the name of Douglas H. Pope Company, dealing in the purchase and sale of commodities in the United States and foreign lands; that the bank began making loans to him in 1949, which continued until his death in 1958; that his accounts were carried in the name of Douglas H. Pope and his trade name of Douglas H. Pope Company; that when he died, he owed the bank, in his individual account, $6,597, and under his trade name, $173,954.

It is averred that the loans were made by the bank because Pope deposited with the bank collateral evidencing assets which did not in fact exist and by misrepresenting to it the ownership and possession of commodities sufficient to amply secure the loan, and that he represented that he was solvent and that his assets far exceeded his liabilities. It is averred that as a result of such false misrepresentations and the deposits of fictitious and non-existent collateral, Pope defrauded complainant of vast sums of

money, the amount having already been stated.

The bill shows that $5,000 from the proceeds of the insurance paid to Lavada H. Pope was deposited in complainant bank, and that $72,000 was deposited in the Merchants National Bank of Mobile, a respondent. It is then averred that the money fraudulently obtained from the bank was used by Pope to purchase the homestead, and pay the interest on the unpaid balance, and to pay the premiums on the life insurance policies, and that the proceeds of the policies and the real estate were impressed with a trust for the benefit of the bank and that the bank did not discover the fraud of Pope until after his death on January 6, 1958.

It also averred that respondents, Harold Donald Percy and Edwin C. Wilcox, asserted claims to an interest in the proceeds.

The prayer of the bill seeks to have the court determine the respective claims of all parties in the funds and the real estate.

Respondent Percy filed an answer and cross-bill admitting most of the allegations but denied that Pope had used all the money loaned him from the bank to pay the premiums and buy the real estate, but says that during that time, Percy had advanced Pope over $242,000 because Pope had fraudulently represented that he was engaged in the business of buying rice hulls in carload lots for export at a handsome profit and that Pope, at the time of his death, owed Percy $19,688.42, and Percy asked that the proceeds of the insurance and the homestead be subjected to his claim.

Respondent Wilcox filed a similar answer and cross-bill to that of Percy alleging that during the period, he advanced Pope over $250,000 based on fictitious carload lots of rice pulp and that at the time of his death, Pope owed Wilcox $34,211.47. Wilcox also asked that the proceeds of the insurance and the homestead be subjected to his claim.

Appellee argues that Pope's personal representative should have been made a party to the suit and that there may have been other creditors who had been defrauded as were the appellants. We cannot agree.

■ There is no question here of a fraudulent conveyance involving the estate of the decedent. The issue is between the widow, Lavada Pope, and the three claimants as to the ownership of the proceeds of insurance policies in which Lavada Pope was the sole beneficiary. The personal representative has no such interest in the policies as to require that he be made a party.

■ If there be persons who ought to be and are not made parties to the suit, that fact does not appear on the face of the bill, and therefore, the objection is not a proper subject of demurrer. Walling v. Thomas, 133 Ala. 426, 31 So. 982. Based upon the allegations of the bill and the cross-bills, the necessary parties are before the court.

The pivotal question in this case is whether monies obtained as loans over a period of years for which fictitious collateral was offered by the borrower and partly invested in insurance policies made payable to the widow of the borrower, or in a homestead owned by the borrower and his widow which passed to her, can be traced into and enforced against the proceeds of the insurance or against the homestead, giving consideration to the exemptions in favor of the widow.

The majority rule seems to be that where a person has embezzled, stolen or misappropriated funds of another and used them for the purchase or payment of premiums on insurance on his life, a trust is created in favor of the owner of the funds, and the owner is entitled to recover from the proceeds of the insurance policies. This recovery is sometimes limited to the amount of the premiums and sometimes to such proportion of the total insurance as the amount of the premiums which have been

paid from the misappropriated funds bears to the total amount of the premiums paid. 38 A.L.R. 930; 24 A.L.R.2d 672.

It is also generally held that statutes which exempt the proceeds of life insurance from the claims of the insured's creditors are inapplicable to prevent one whose funds have been wrongfully used to pay premiums from resorting to the proceeds for relief. 24 A.L.R.2d 675.

Cases applying these principles and cited by appellants are: Truelsch v. Northwestern Mut. L. Ins. Co., 186 Wis. 239, 202 N.W. 352, 38 A.L.R. 914—embezzler bookkeeper; Vorlander v. Keyes, 8 Cir., 1 F.2d 67 —embezzler bank president; Massachusetts Bonding & Ins. Co. v. Josselyn, 224 Mich. 159, 194 N.W. 548—embezzler administrator; Dayton v. H. B. Claflin Co., 19 App. Div. 120, 45 N.Y.S. 1005—thief; Shaler v. Trowbridge, 28 N.J.Eq. 595—embezzler partner; Holmes v. Gilman, 138 N.Y. 369, 34 N.E. 205, 20 L.R.A. 566—embezzler partner; Brown v. New York Life Ins. Co., 9 Cir., 152 F.2d 246—embezzler bank vice president; Jansen v. Tyler, 151 Or. 268, 49 P.2d 372—embezzler corporate officer; Succession of Onorato, 219 La. 1, 51 So.2d 804, 24 A.L.R.2d 656—embezzler agent of estate funds.

It will be noted that in every case, the funds were stolen or embezzled. Insofar as our investigation reveals, it is uniform in the United States that a thief acquires no title to personal property and, ordinarily, no one can transfer to another a better title than he himself possesses. Our cases are in accord. Stathem v. Ferrell, 267 Ala. 333, 101 So.2d 546; Geneva Gin & Storage Co. v. Rawls, 240 Ala. 320, 199 So. 734; Barrow v. Brent, 202 Ala. 650, 81 So. 669; see Tit. 57, § 29, Code 1940.

In the cases cited by appellants, title to the stolen or embezzled funds never left the true owner, and the owner was permitted to recover from the proceeds of the insurance.

In the instant case, Douglas Pope did not steal, embezzle or misappropriate any funds of appellants. Under the allegations of the bill, the bank, "loaned him monies continuously" from "the initial dates of the opening of said accounts until his death" (1949–1958). It is alleged that he gave notes for the sums he borrowed. The title to the borrowed money was in Douglas Pope to do with as he pleased, and there is no allegation that he promised to use the money in any particular way or for any specific purpose. Whether the collateral was the same or different for each loan, we are not apprised; it is alleged that he "obtained such loans by depositing with your Complainant collateral evidencing assets which did not in fact exist; and by falsely misrepresenting to it the ownership and possession of commodities sufficient in value and volume to amply secure said loans." But it still remains that the bank intended to lend the money to him, it loaned him money "continuously" over a period of nine years and did not become dissatisfied with its business relationship with him until after his death.

We think there is a very valid distinction in the instant case and the cases based upon embezzlement, theft or misappropriation of funds where title to the money did not pass from the true owner.

One other case cited by appellants requires mention. It is Exchange State Bank v. Poindexter, 137 Kan. 101, 19 P.2d 705. "The petition alleged that she conspired with her husband in his obtaining two loans from the bank, one on October 3, 1929, for $2,123, and the other on April 10, 1930, for $1,019.67, representing at the time that he was the owner of 150 head of cattle and the money was to be used for feeding and caring for them, while he in fact owned no cattle at that time, but used the funds borrowed to pay premiums on his insurance policies in favor of his wife, and that he was at that time insolvent." The court there held that the widow was charged with knowledge of what her husband was doing

to secure the money. In the instant case, there is no inference in the allegations of any complicity or knowledge of any sort on the part of Mrs. Pope.

We have not been cited to, nor have we found, any case factually in point with the one under consideration, but since there was no embezzlement, theft or misappropriation on the part of Douglas Pope, and no alleged complicity or knowledge on the part of his widow, we are unwilling to apply the cited authorities to the facts in the instant case.

Another persuasive feature supporting the trial court's action in sustaining the demurrer is Tit. 7, § 624, Code 1940, dealing with the rights of creditors and beneficiaries under policies of life insurance. In pertinent part, the section reads: " * * the husband or father may insure his life for the benefit of his wife, or for the benefit of his wife and children, or for the benefit of his child or children, either in their own names or in the name of a trustee and such insurance, and the proceeds and avails thereof, whether or not the right to change the beneficiary is reserved or permitted, is exempt from liability for his debts or engagements, or for his torts or any penalty or damages recoverable of him." And the "policy of such legislation finds its origin in the duty of maintenance and protection which every husband owes to his family, and the importance to the state that as few widows and orphans as possible should be cast as paupers upon the public charity," and the statute should be liberally construed in favor of those whom it seeks to protect. Kimball v. Cunningham Hardware Co., 192 Ala. 223, 68 So. 309, 312; Young v. Thomason, 179 Ala. 454, 60 So. 272.

Again, we note that the cases holding similar exemption statutes inapplicable are instances where the funds were stolen, embezzled or misappropriated, or where the wife had notice or knowledge of the husband's activities.

Appellants state that we have quoted the following from Pomeroy, § 1053, with approval and argue that it is decisive of the case before us:

"Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property in the hands of the original wrong-doer or in the hands of a subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved of the trust."

We have found this quotation in five of our cases, each of which discloses a fiduciary relationship in which the person practicing the fraud took title to land in himself and claimed antagonistically to the party who, in equity, should have had the title. See Knowles v. Canant, 255 Ala. 331, 51 So.2d 355; Bevels v. Hall, 246 Ala. 430, 21 So.2d 325; Edmondson v. Jones, 204 Ala. 133, 85 So. 799; Butler v. Watrous, 185 Ala. 130, 64 So. 346; Kent v. Dean, 128 Ala. 600, 30 So. 543.

In each of those cases, the more apt citation from Pomeroy could have been § 1055, which reads:

"A second well-settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose,— as, for example, a promise to convey

the land to a designated individual, or to reconvey it to the grantor, and the like,—and having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement."

We found the quotation from Pomeroy, § 1053, in one other of our cases, American-Traders' National Bank v. Henderson, 222 Ala. 426, 133 So. 36. There, the bill was to reform a contract of life insurance and it was alleged that one Bell was the agent of the insurance company, the employer of Henderson and the dominant party to the transaction; that Bell promised Henderson to get a life insurance policy of $10,000 payable to Henderson's estate, but Bell had himself named beneficiary; that the policy was issued and delivered to Bell who kept it until Henderson died. The court held that the allegations in the bill established a constructive trust in the policy and its proceeds in favor of Henderson's estate.

Thus, every time the quotation has been approved in our cases, it has been in a case where a fiduciary relationship, and not that of lender and borrower, prevailed. No such fiduciary relationship is shown between Douglas Pope and any of the appellants.

We are cited to 54 Am.Jur., Trusts, § 248, the first two sentences of which read:

"It is a fundamental rule having great practical application particularly in all those fields of law involving fiduciary relationships that equity will pursue property that is wrongfully converted by a fiduciary, or otherwise compel restitution to the beneficiary. The rule is actually one of trusts, since the wrongful conversion gives rise to a constructive trust which pursues the property, its product, or proceeds in accordance with the rule. * * *"

It will be noted that the cited section applies to a fiduciary relationship where there has been a wrongful conversion. Douglas Pope did not wrongfully convert the property of appellants. The money was loaned to him to use as he saw fit for several years prior to his death.

We cannot say that the approved quotation from Pomeroy, § 1053, is applicable to the factual situation here, because in addition to the lack of the fiduciary relationship and wrongful conversion, the beneficiary of the insurance policy is protected by Tit. 57, § 29, Code 1940.

From aught appearing from the bill, the real estate is the homestead of the widow. We think what has been said concerning the proceeds of the life insurance policies is dispositive of the attempt to trace the funds borrowed by Douglas Pope into the homestead.

We are not to be understood by this opinion as approving or disapproving "the majority rule" which the cases cited by appellants enunciate. That question, concerning the thief, embezzler, or accomplice, is not before us. We merely hold that those cases are not apt authority when applied to the facts in the instant case.

It follows that the decree of the lower court should be affirmed, and appellants are given thirty days from the date of notice of this decision to amend as they may be advised.

On appeal, three cases were consolidated and the order is appropriate in each of the appeals.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.