Saiqa AHMAD, Plaintiff,

v.

GRUNTAL & CO. INC., Defendant.

Civ. A. No. 95–561.

United States District Court, D. New Jersey.

April 19, 1995.

Harry Osborne, Evans, Osborne, Kreizman & Bonney, Little Silver, NJ, for plaintiff.

Walter F. Timpone, Suzanne C. Midlige, McElroy, Deutch & Mulvaney, Morristown, NJ, for defendant.

## OPINION

WOLIN, District Judge.

This matter is before the Court on plaintiff's Order to Show cause why the proceeds of a supplemental life insurance policy should not be paid to the plaintiff. Earlier this Court allowed $100,000 of the proceeds of the supplemental life insurance policy to be paid to the plaintiff. For the reasons set forth herein, the Court holds that the balance of the supplemental life insurance policy should be paid to the plaintiff.

## BACKGROUND

The Court has pending before it two related lawsuits. The present lawsuit, *Ahmad v. Gruntal,* is an interpleader action to determine who is entitled to proceeds from two insurance policies taken out on the life of Waseem Ahmad. Plaintiff, Saiqa Ahmad, is the widow of Waseem Ahmad. The Court also has pending before its *Gruntal v. Meizoso,* a case that alleges Waseem Ahmad and his superior, Mr. Meizoso, embezzled some $8 million from Gruntal. On April 3, 1995, Gruntal amended its complaint in *Gruntal v. Meizoso* to add Saiqa Ahmad as a defendant.

On February 14, 1994, plaintiff filed an Order to Show Cause in *Ahmad v. Gruntal* why proceeds from the supplemental life insurance policy should not paid to the plaintiff. Mr. Ahmad had two separate life insurance policies. The basic life insurance policy was paid for entirely by his employer. This policy provided benefits equal to one and one half times Mr. Ahmad's salary. In addition, on August 7, 1987, Mr. Ahmad enrolled in a supplemental life insurance policy. This policy provided benefits equal to four times Mr. Ahmad's salary. This policy was paid for by Mr. Ahmad at a cost $47.60 per month, which was deducted directly from Mr. Ahmad's paycheck. Waseem Ahmad died on October 16, 1994. The beneficiary of the supplemental life insurance policy is Mr. Ahmad's widow, Saiqa Ahmad, the plaintiff in this action.

There is a question as to whether Waseem Ahmad changed the beneficiary under the basic life insurance policy from his wife to his estate. If it is determined that the estate is the beneficiary, then persons other than the plaintiff, Saiqa Ahmad, may be entitled to the proceeds of the basic life insurance policy. Therefore, this policy is not at issue in the motion currently before the Court. The only issue is whether Saiqa Ahmad is entitled to proceeds from the supplemental life insurance policy.

Since her husband's death, Saiqa Ahmad, has been subsiding on Social Security benefits of $1,644 per month. She has been unable to make her mortgage payments and the bank is threatening her with foreclosure. Thus, the Court found sufficient grounds on March 15, 1995 to release $100,000 of the proceeds on the supplemental life insurance policy to plaintiff. This application focuses on whether the balance of the supplemental life insurance should be paid to plaintiff.

The insurance company, Provident Life Insurance Co., has deposited the sum of $621,-121.14 with the Clerk of the Court, comprising $179,000.00 of the proceeds on the basic life insurance policy and $432,000.00 of the proceeds on the supplemental life insurance policy.

On April 17, 1994, this Court issued an order dismissing Provident Life Insurance Co. from this litigation.

## DISCUSSION

■ Gruntal argues that because Mr. Ahmad is alleged to have embezzled $8 million from the company it is entitled to keep all of his salary. Gruntal further argues that because Mr. Ahmad is alleged to have paid for the supplemental life insurance policy with his salary they are entitled to keep the proceeds of the supplemental life insurance policy as well. Moreover, Gruntal alleges that Saiqa Ahmad may have been a knowing participant in the embezzlement scheme, and, therefore, is not entitled to the proceeds of the supplemental life insurance policy. Gruntal's arguments are premised on equity. Gruntal asks this Court to place a constructive trust on the proceeds of the supplemental life insurance policy.

When Gruntal first alleged that Saiqa Ahmad was a knowing participant in the embezzlement scheme, this Court granted Gruntal thirty days to uncover some evidence to support its allegations. One month later, the only evidence Gruntal can point to is that Saiqa Ahmad's bank account received $130,000 from companies allegedly operated by her husband in conjunction with his alleged embezzlement scheme. Gruntal argues that this evidence is enough for the Court to impose a constructive trust on the insurance proceeds.

In the alternative, Gruntal asks for still more time to uncover evidence that Saiqa Ahmad was a knowing participant in the embezzlement. The Court notes that in the thirty days Gruntal had to investigate this matter it chose not to take the deposition of Saiqa Ahmad. Therefore, the Court finds no basis for granting Gruntal additional time to uncover facts to support its theory.

In support of its equity argument Gruntal relies on *Holmes v. Gilman,* 34 N.E. 205, 138 N.Y. 369 (1893). In *Holmes,* a partner fraudulently used partnership funds to invest in life insurance policies in favor of his wife and children. The New York Court of Appeals held the partnership was, therefore, entitled to the proceeds of the life insurance policies. In *Shaler v. Trowbridge,* 28 N.J.Eq. 595 (E. & A. 1877), the Court held if a fiduciary uses trust money to purchase property in his own name, equity demands that the fiduciary be deemed to be holding the property in trust for the owner of the trust funds.

Thus, Gruntal argues that "Ahmad's course of 'active fraud' and 'dishonest conduct' mandates that equity fasten upon him and convert him into a trustee of the misappropriated funds for the benefit of *Gruntal.* Public policy requires that one who has corruptly thrust himself into the position of a trustee, shall not profit by his fraud." While Gruntal's argument is facially appealing it is misplaced in this case because there has been no judicial finding that Waseem Ahmad embezzled funds.

■ More importantly, N.J.S.A. 17B:24–9 is controlling and entirely dispositive of the motion pending before the Court. This statute exempts the proceeds of any group life insurance policy from the claims of creditors. It provides in pertinent part:

A policy of group life insurance or group health insurance with the proceeds thereof payable to the individual insured or to the beneficiary thereunder, shall not be liable, either before or after payment, to be applied by any legal *or equitable process* to pay any debt or liability of such insured individual or his beneficiary or of any other person having a right under the policy. The proceeds thereof, when not made payable to a named beneficiary or to a third person pursuant to a facility of payment clause, shall not constitute part of the estate of the individual insured for the payment of his debts.

(Emphasis added). The legislative intent of this statute is to insulate group life insurance proceeds from claims identical to the claims being asserted by Gruntal in this case. Thus, the statute mandates payment of the proceeds to the plaintiff, Saiqa Ahmad.

Gruntal cites to a number of cases from outside of New Jersey that have refused to apply exemption statutes such as N.J.S.A. 17B:24–9 in cases where fraud has been proved. Significantly, Gruntal was unable to point to a single case construing N.J.S.A. 17B:24–9—or an exemption statute from another state—that deprived a widow of the

proceeds of life insurance when her husband is *alleged* to have committed a fraud.

The cases cited by Gruntal are distinguishable from the present case because in each of those case the fraud was proven. In this case, Gruntal merely accuses Waseem Ahmad of embezzlement. Here, there has been no such judicial determination.

For example, in *Succession of Onorato*, 219 La. 1, 51 So.2d 804 (1951), the Court found that the husband had misappropriated funds from his employer. *Id.* at 806. In *Brown v. New York Life Ins. Co.*, 58 F.Supp. 252 (D.Or.1944), the Court found the husband had embezzled funds from his employer. No such finding has been made in the present litigation or in the companion litigation. Gruntal has merely alleged that Waseem Ahmad embezzled funds. Without a judicial finding of guilt, Gruntal's attempt to impose a constructive trust on life insurance *allegedly* paid for with embezzled funds is premature.

Where fraud is only alleged and not proved, courts have refused to impose a constructive trust on the proceeds of life insurance. In *Slatcoff v. Dezen*, 76 So.2d 792 (Fla.1954), the Court refused to attach a life insurance policy stating that appellant had only made a "suggestion of fraud." *Id.* at 793. The Court held: "[W]e must assume that the debtor is honest unless and until the contrary is established." *Id.* Likewise, in the present case the Court must assume that Waseem Ahmad is innocent of embezzlement until the contrary is established. And, the Court must assume the Saiqa Ahmad had no knowledge of the alleged embezzlement until the contrary is established.

Similarly, in *First National Bank of Mobile v. Pope*, 270 Ala. 202, 117 So.2d 174 (1959), the Court refused to place a constructive trust on life insurance proceeds payable to a widow because there was no evidence that the husband had embezzled or stolen funds from his employer. In this case, the husband misrepresented collateral to bank, which issued substantial loans to him. Upon discovering the husband's misrepresentations, the banks sought to place a constructive trust on the life insurance proceeds payable to his widow. The widow cited to an Alabama statute exempting life insurance proceeds from claims of creditors. The Court held: "[C]ases holding similar exemption statutes inapplicable are instances were the funds were stolen, embezzled or misappropriated or where the wife had notice or knowledge of the husband's activities." *Id.*, 117 So.2d at 178. Absent proof of such embezzlement the Court held a constructive trust should not be imposed on the life insurance proceeds.

Thus, Gruntal's citation to *Slatcoff v. Dezen, supra,* and *First National Bank of Mobile v. Pope, supra,* as authority for imposing a constructive trust on the proceeds of a life insurance policy in the instant case is inaccurate and misleading. These courts both refused to impose a constructive trust because there was no proof of embezzlement.

■ Gruntal next argues that Waseem Ahmad attempted to secrete the allegedly embezzled funds by his purchase of the life insurance policies. Accordingly, Gruntal alleges that the purchase of the life insurance was a fraudulent transfer. N.J.Stat.Ann. 25:2–25 states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) with actual intent to hinder, delay, or defraud any creditor of the debtor....

Again, however, Gruntal has offered no proof that Waseem Ahmad's purchase of the supplemental life insurance policy was a fraudulent transfer. Arguably, Waseem Ahmad purchased the life insurance simply to protect his wife and children. More importantly none of the criteria for a fraudulent transfer under N.J.S.A. 25:2–26 are present in this case including:

a. The transfer of premiums was not made to an insider.

b. Waseem Ahmad retained. no control over the premium payments.

c. The payment of premiums was open and unconcealed.

d. Waseem Ahmad was never sued or threatened with suit.

e. The amount of the premiums was de minimis.

f. Waseem Ahmad did not abscond.

Moreover, even if Gruntal was able to prove that Waseem Ahmad embezzled funds and used these embezzled to purchase life insurance, Gruntal would only be entitled to recoup the premium payments. N.J.S.A. 17B:24–6 provides that in cases of transfer with intent to defraud, the creditor can recoup only "the amount of any premiums for such insurance paid with intent to defraud creditors, with interest thereon." Likewise, in *Onorato,* the Court held that the employer was entitled to recover only the premium payments made with embezzled funds—not the entire proceeds of the life insurance.

## CONCLUSION

In sum, Gruntal's claim to the proceeds of the supplement life insurance policy is premature. Gruntal is not a judgment creditor.[1] No judicial determination has been made that Waseem Ahmad embezzled funds from Gruntal. No judicial determination has been made that Waseem Ahmad used embezzled funds to purchase the supplemental life insurance policy and no probative evidence as to Saiqa Ahmad's knowledge has been introduced. Thus, at this time Gruntal has no legal claim to the proceeds of the supplemental life insurance policy. N.J.S.A. 17B:24–9 mandates that this Court turn over the proceeds of the supplemental life insurance policy to Saiqa Ahmad.

An appropriate order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 19th day of April, 1995,

ORDERED that the balance of the supplemental life insurance policy be paid to Saiqa Ahmad.

---

1. Gruntal's reliance on *Jugan v. Friedman,* 275 N.J.Super. 556, 646 A.2d 1112 (App.Div.1994) is misplaced. In this case a judgment creditor was entitled to the cash value of a life insurance policy of the debtor. The Court held a hearing and determined that the debtor, a doctor without medical malpractice insurance, had deliberately transferred all of his assets to his wife and purchased the life insurance policy to make himself judgment proof.