On Application for Rehearing in Case No. 2101192 and on Original Submission in Case No. 2110822

MOORE, Judge.
On April 13, 2012, this court issued an opinion in appeal no. 2101192, affirming a summary judgment entered by the Domestic Relations Division of the Mobile Circuit Court (“the domestic-relations court”) against Vicki Joan Brunson Stroeker, Katie Brunson, and Angela M. Brunson (sometimes hereinafter referred to collectively as “the appellants”). The appellants subsequently applied for rehearing. While considering the application for rehearing, this court discovered that the appellants had also appealed a judgment entered by *141 the Mobile Circuit Court involving the same general subject matter to the Alabama Supreme Court. This court sua sponte requested that the supreme court transfer that appeal to this court; that request was granted, pursuant to § 12-2-7(6), Ala.Code 1975. The second appeal was docketed as appeal no. 2110822 and has now been consolidated with appeal no. 2101192 for the purpose of rendering one opinion. Accordingly, our April 13, 2012, opinion on original submission in appeal no. 2101192 is withdrawn, and the following is substituted therefor.

Factual and Procedural Background

On April 19, 1993, the domestic-relations court entered a judgment divorcing Stroeker (“the former wife”) from Joseph Talmadge Brunson (“the former husband”). The divorce judgment provided, in pertinent part:
“[The former husband] shall name the minor children [Katie and Angela Brun-son] as beneficiaries on his present life insurance program and shall furnish such proof that the children have been so designated by furnishing a copy of the designation to [the former wife] within thirty days from the date of this Judgment.”
On September 22, 1993, the domestic-relations court purported to enter an amended judgment confirming a June 9, 1993, agreement between the former husband and the former wife; that amended judgment did not modify the foregoing provision in any respect. In compliance with the divorce judgment, the former husband designated Katie Brunson and Angela Brunson (sometimes hereinafter referred to as “the children”), then ages six and three years, as the beneficiaries of a whole-life insurance policy paying $100,000 upon his death.
The former wife’s family owns an insurance company, and the former wife’s father acted as the agent to secure the former husband’s life-insurance policy. After the former husband went to prison in 1995, the former wife’s father paid most of the premiums to maintain the policy. On July 31, 2009, over a year after the younger child had reached the age of majority, the former husband changed the beneficiary on the life-insurance policy from the children to Judith Harold, with whom he had had a long-standing relationship.
The former husband contracted terminal cancer at some point. On March 10, 2010, the former wife filed in the domestic-relations court a petition for contempt against the former husband, alleging that he had contemptuously violated the life-insurance provision of the divorce judgment and requesting that that court order the former husband, who was dying from cancer, to immediately reinstate the children as the beneficiaries on his life-insurance policy. The former husband died within hours after the contempt petition was filed; the former wife notified the domestic-relations court the next day of the former husband’s death and requested that the proceeds of the life-insurance policy be frozen and paid into the court. The former wife also moved to add the children as plaintiffs and to substitute Frank Kruse, the administrator of the former husband’s estate, as the defendant; that motion was granted.
In April 2010, Harold moved to be added as a party to the action. Although the former wife objected to that motion, asserting that Harold was not a proper party in the contempt action and that she lacked standing, the domestic-relations court granted Harold’s motion. Also in April 2010, Kruse and Harold both filed answers asserting that the life-insurance provision in the divorce judgment no longer applied after the children reached the age of majority. Harold asserted that the former husband had validly designated her as the *142 beneficiary and requested that the domestic-relations court declare that she was entitled to the life-insurance proceeds. The appellants replied that the life-insurance provision was the product of an agreement between the former wife and the former husband, that the former husband had drafted the agreement, and that it should be construed so that it did not expire when the children reached the age of majority.
On May 10, 2010, OM Financial Life Insurance Company, the insurer that issued the life-insurance policy covering the former husband, filed, pursuant to Rule 22, Ala. R. Civ. P., a complaint for interpleader in the civil division of the Mobile Circuit Court (“the circuit court”). The insurer asserted that it was aware of the controversy between the appellants and Harold and that it had no interest in the proceeds of the life-insurance policy other than to pay the proper beneficiary or beneficiaries; it requested a judgment declaring the proper beneficiary or beneficiaries. The insurer named as defendants to its inter-pleader action the appellants and Harold.
Harold answered the complaint requesting that the circuit court declare her the proper beneficiary. The appellants answered the complaint and sought discovery relevant to Harold’s claim to the insurance proceeds. The appellants challenged the validity of the 2009 beneficiary designation on the former husband’s life-insurance policy, asserting that it had been fraudulently made or was a forgery, and they requested a trial on that claim. According to the State Judicial Information System, the cause was scheduled for a bench trial in August 2011.
In January 2011, the appellants and Harold filed competing summary-judgment motions in the domestic-relations court. After receiving oral argument on the motions, the domestic-relations court entered an order on May 4, 2011, denying the appellants’ summary-judgment motion and granting Harold’s summary-judgment motion. The domestic-relations court ruled that Harold was entitled to the life-insurance proceeds as a matter of law and ordered that those proceeds should be paid to Harold. The appellants immediately filed a motion to vacate the May 4, 2011, judgment.
While the appellants’ postjudgment motion was pending in the domestic-relations court, the circuit court, on July 18, 2011, ordered the insurer to deposit the life-insurance proceeds with the clerk of the circuit court. Upon the insurer’s depositing the insurance proceeds with the clerk, the circuit court then dismissed the insurer from the action, with prejudice.[1] On July 29, 2011, the domestic-relations court denied the appellants’ postjudgment motion. On August 1, 2011, the appellants designated their expert witness to testify at the trial in the circuit court on the issue of the authenticity of the beneficiary designation. Shortly thereafter, Harold moved the circuit court to enforce the May 4, 2011, judgment entered by the domestic-relations court, asserting that the circuit-court action was barred by the doctrines of res judicata and/or collateral estoppel.[2] On September 9, 2011, the circuit court granted Harold’s motion to enforce the *143 domestic-relations court’s judgment, without explanation. The appellants filed their notice of appeal of the domestic-relations court’s May 4, 2011, judgment that same day.
On September 15, 2011, the appellants moved to alter, amend, or vacate the circuit court’s judgment. The circuit court denied that motion on September 30, 2011, and the appellants timely appealed that judgment to our supreme court, which as noted earlier, subsequently transferred the appeal to this court.

Analysis

I. The Estate is not a Proper Appellee
We begin our analysis by dismissing Kruse, the administrator of the former husband’s estate, as an appellee. As stated above, the appellants filed a contempt action against the former husband before his death and subsequently moved to substitute the administrator of his estate as a defendant. Although the domestic-relations court granted that motion, it appears from the record that the domestic-relations court did not consider the jurisdictional issue of whether a contempt action can proceed against the estate of a deceased person.
Our research has revealed only one case directly on point, an unreported opinion from the Superior Court of Connecticut, Diana v. Diana, (No. FA9969335, Sept. 14, 2001) (Conn.Super.2001) (not reported in A.2d). In Diana, a wife sued her husband for a dissolution of the marriage, which prompted the automatic issuance of an interlocutory order preventing either party from changing the beneficiaries on his or her life-insurance policies. The husband died while the action was pending; the wife subsequently discovered that the husband had removed her as the beneficiary of his life-insurance policy. The wife moved the court to substitute the estate of the husband as a defendant so she could pursue a contempt action against the estate. The Superior Court of Connecticut said:
“A substitute defendant cannot vicariously be found in contempt of court for violating court orders directed to the deceased defendant. In this case, even if the court found the defendant husband to have been in civil contempt, the executor of the defendant’s estate does not have the authority to change the beneficiaries of the decedent’s life insurance policy nor redistribute the death benefits paid to the beneficiaries by the insurance company. ‘The proceeds of a life insurance policy made payable to a named beneficiary are not assets of the estate, but belong solely to the beneficiary.’ 31 Am.Jur.2d, Executors and Administrators 257, § 509 (1989). See General Statute § 45a-347. Insurance death benefits are paid by the insurer directly to the named beneficiaries of the policy. ‘It follows, then, that satisfying the beneficiary is the contractual responsibility of the insurer not the fiduciary responsibility of the [executor].’ Equitable Life [Assurance] Society of the United States v. Sandra Porter-[Englehart], 867 F.2d 79 (1st Cir.1989).”
Contempt actions have one of two purposes, either punishment for deliberate disobedience to court orders or coercion to force compliance with court orders. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002). We have not located any Alabama caselaw that allows the estate of a deceased person to be punished for alleged contemptuous acts committed by the deceased person before his or her death. Furthermore, like in Connecticut, in Alabama life-insurance proceeds made payable to parties other than the deceased person, the estate of the deceased person, or the personal representative of the es *144 tate of the deceased person do not become a part of the estate. See Rau v. Rau, 429 So.2d 593, 595 (Ala.Civ.App.1982) (“[B]y virtue of § 27-14-29, [Ala.] Code 1975, the proceeds of the policy of insurance in this case would not be a part of the estate nor subject to creditor’s claims.”). Kruse, as the administrator of the former husband’s estate, has no interest in the life-insurance policy or the proceeds therefrom. See First Nat’l Bank of Mobile v. Pope, 270 Ala. 202, 205, 117 So.2d 174, 176 (1960) (holding that estate of insured was not indispensable party in dispute over insurance proceeds between beneficiary and purported constructive trustees because “[t]he personal representative has no [ownership] interest in the policies as to require that he be made a party”). Thus, the domestic-relations court could not have, through its contempt powers, compelled Kruse to reform the beneficiary designation or to pay the children the life-insurance proceeds.
In short, the domestic-relations court did not have jurisdiction to find the estate of the former husband in contempt for any actions undertaken by the former husband during his lifetime with regard to the beneficiary designation.[3] Thus, because the estate has no interest in the life-insurance proceeds, Kruse is hereby dismissed as a party to this appeal.
II. The Domestic-relations CouH’s Judgment
The appellants argue at length in their brief to this court in appeal no. 2101192 that the life-insurance provision in the divorce judgment should be viewed as part of a voluntary property-settlement agreement between the former wife and the former husband.[4] In Williams v. Williams, 276 Ala. 43, 158 So.2d 901 (1963), the supreme court held that such an agreement, when incorporated into a divorce judgment, could create a vested equitable interest in life-insurance proceeds. The record in this case shows, however, that, following an ore tenus hearing, the domestic-relations court unilaterally imposed the life-insurance provision as *145 part of its April 19, 1993, divorce judgment. The former husband and the former wife attempted to modify that judgment by an agreement dated June 9, 1993, which the domestic-relations court purported to confirm on September 22, 1993; however, the agreement did not alter any of the language of the life-insurance provision. The original provision has remained intact since its inception; the subsequent agreement of the former wife and the former husband to the life-insurance provision amounts merely to their acknowledgment that they must abide by the terms of the original divorce judgment and cannot be characterized as a modification of those terms by agreement.[5] Thus, we conclude that Williams is not dispositive of this case.
When a trial court in a domestic-relations action orders an obligor spouse to designate children of the marriage as the beneficiaries of a life-insurance policy, the sole purpose of that provision is to secure the payment of child support. In Whitten v. Whitten, our supreme court noted that “[mjinor children are commonly designated as beneficiaries of life insurance policies as ‘an aspect of child support’ pursuant to an order of divorce.” 592 So.2d 183, 186 n. 4 (Ala.1991) (quoting H. Clark, Jr., The Law of Domestic Relations in the United States 718-19 (2d ed.1988), and citing Note, Child Support, Life Insurance, and the Uniform Marriage and Divorce Act, 67 Ky. L.J. 239 (1978)). Based in part on that language in Whitten, this court, in Jordan v. Jordan, 688 So.2d 839, 842 (Ala.Civ.App.1997), held that a trial court in a domestic-relations action does not have to state its reasons for mandating life-insurance provisions like the one at issue in this case “because the reason will always be identical. That reason, quite obviously, is to insure that minor children will receive support in the event the supporting parent dies.”
Under Alabama law, with two notable exceptions inapplicable here, see Ex parte Bayliss, 550 So.2d 986, 991 (Ala.1989) (authorizing courts to award postminority-ed-ucational support), and Ex parte Brewing-ton, 445 So.2d 294 (Ala.1983) (allowing postminority support for disabled children), a parent generally does not owe child support past the date when a child attains the age of majority. In Whitten, supra, our supreme court seized on that point to reverse a circuit court’s judgment that had negated the husband’s change of beneficiary from the child of his former marriage to other relatives. Based on a default divorce judgment, the husband in Whitten was required to ‘“keep in full force and effect all life insurance on his life with the parties’ minor child as the irrevocable beneficiaries [sic] of such insurance.’ ” 592 So.2d at 184. The supreme court held that the life-insurance provision amounted to a child-support award that did not create an indefeasible, equitable interest in the proceeds of the life-insurance policy that lasted past the point when the child reached the age of majority. The supreme court therefore reversed the judgment, stating: “[T]he trial court’s award of the proceeds to [the child] after he had attained the age of majority in effect amounted to an [unauthorized] award of postminority support.” 592 *146 So.2d at 186; see also Brown v. Brown, 604 So.2d 365, 369 (Ala.1992) (holding that constructive trust in favor of the minor child applied to life-insurance proceeds based on a provision in the divorce judgment that obligated the father to designate the child as the irrevocable beneficiary during child’s minority).
In this case, the life-insurance provision at issue states only that the former husband “shall name the minor children as beneficiaries on his present life insurance”; the provision does not require that the former husband designate the children as irrevocable beneficiaries. The life-insurance provision does not expressly state that it lasts only through the minority of the children, and the appellants argue that the term “minor” could be reasonably construed as only describing the children, not as limiting the period of their beneficiary status. However, Whitten implies that all life-insurance provisions like the one in this case remain inviolate only during the minority of the benefited children unless the judgment expressly provides that the life insurance is intended to secure postmi-nority Bayliss or Brewington support, which is not the case here.
The appellants also state that the former wife subjectively believed the children would remain the beneficiaries of the life-insurance policy after their minority ended and that the former wife’s family acted on that belief by paying the premiums due on the policy. The appellants argue that this parol evidence creates a question of fact as to the intent of the former husband and the former wife in using the language contained in the life-insurance provision. However, the domestic-relations court, not the former husband and the former wife, crafted the life-insurance provision, and their interpretation of the terms of that provision are immaterial. If a judgment is ambiguous, a court can consider its meaning in light of the entire record, but it cannot resort to parol evidence from the parties as if it was construing a contract to ascertain their understanding and intent. Reading v. Ball, 291 S.C. 492, 496, 354 S.E.2d 397, 399 (Ct.App.1987). More to the point, we find that, under Whitten, the divorce judgment unambiguously required the former husband to name the children as beneficiaries during their minority, so there is no need to resort to extrinsic evidence to determine the meaning of its terms.
The undisputed evidence shows that both children had attained the age of majority long before the former husband changed the beneficiary designation of the life-insurance policy. According to Whit-ten, which we are required to follow, see § 12-3-16, Ala.Code 1975,[6] whatever equitable interest the children obtained in the life-insurance policy ended on their 19th birthdays. Thereafter, the former husband was free to change his beneficiary designation without violating the life-insurance provision in the divorce judgment. Consequently, once the children attained the age of majority, the domestic-relations court lacked jurisdiction over the life-insurance proceeds. See Whitten, 592 So.2d at 186 (“Because the trial court’s equitable jurisdiction over the proceeds of the policy terminated on June 21, 1990, the date Jeffrey Whitten attained the age of majority, *147 William Whitten was free, thereafter, to make any disposition of his policy that he deemed proper.”). Thus, its judgment purporting to award the life-insurance proceeds to Harold is void.[7]
“An order entered by a trial court without jurisdiction is a nullity.” J.B. v. A.B., 888 So.2d 528, 532 (Ala.Civ.App.2004). “A void judgment will not support an appeal, and ‘an appellate court must dismiss an attempted appeal from such a void judgment.’ ” Colburn v. Colburn, 14 So.3d 176, 179 (Ala.Civ.App.2009) (quoting Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008)). Accordingly, we dismiss appeal no. 2101192.
III. The Circuit Court’s Judgment
The circuit court entered a final judgment in the interpleader action by awarding Harold the life-insurance proceeds. The record indicates that the circuit court based its judgment solely on Harold’s contention that the domestic-relations court had already decided that she was the proper beneficiary of the life-insurance policy and that the doctrine of res judicata or the doctrine of collateral estop-pel prevented relitigation of that issue. However, as explained above, the domestic-relations court lacked jurisdiction to determine that controversy. The doctrines of res judicata and collateral estoppel apply only when a prior judgment was rendered by a court of competent jurisdiction. See, e.g., Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 793 (Ala.2007) (reciting the elements of res judicata and collateral estoppel and recognizing that an essential element of both *148 doctrines is that the claim or issue has been or could have been decided in a prior action by a court of competent jurisdiction). Because the domestic-relations court lacked jurisdiction, its judgment could not have any preclusive effect and the circuit court erred in relying on it.
Therefore, we reverse the judgment in appeal no. 2110822, and we remand the cause for further proceedings,[8] including the adjudication of whether the former husband did, in fact, properly change the beneficiary designation on the life-insurance policy, an issue not yet decided by any court.
2101192 — APPLICATION GRANTED; OPINION OF APRIL 13, 2012, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
2110822 — REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writings.

. The record indicates that the insurer deposited the life-insurance proceeds on July 29, 2011, but that the circuit court acknowledged the insurer’s action and dismissed it from the action on July 16, 2011. The record does not explain the discrepancy.

. Harold then amended her answer to assert the affirmative defenses of res judicata and collateral estoppel, and she supplemented her motion to enforce the domestic-relations court's judgment.

. We note that the domestic-relations court did not rule on the contempt motion against the estate, which ordinarily would render its judgment nonfinal. However, because any ruling on the contempt motion would have been void for lack of jurisdiction anyway, we consider the summary judgment to have disposed of all matters properly pending before the domestic-relations court.
We also note that, on May 11, 2010, the appellants filed a motion to compel the estate to pay an alleged child-support arrearage of $120,000, which the domestic-relations court did not adjudicate. However, only a probate court has jurisdiction over a child-support-arrearage claim against the estate of a deceased obligor parent. See generally Smith v. Estate of Baucom, 682 So.2d 1065 (Ala.Civ.App.1996). Hence, the failure of the domestic-relations court to rule on that claim does not render its judgment nonfinal.

. Harold asserts that the appellants have raised this argument for the first time on appeal and, thus, that this court may not consider it. See Shiver v. Butler Cnty. Bd. of Educ., 797 So.2d 1086, 1088 (Ala.Civ.App.2000) ("Generally, a reviewing court cannot consider arguments made for the first time on appeal.”). We note, however, that the appellants asserted in their postjudgment motion that the provision at issue was not in the nature of a child-support award, as Harold has asserted. " ' "[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.” ’ ” Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala.2010) (quoting Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668, 678 (Ala.2007), quoting in turn Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988)). In denying the appellants’ postjudgment motion, the domestic-relations court indicated that it had considered the arguments presented by counsel for the parties at the hearing on the appellants’ post-judgment motion. We will therefore consider the appellants' argument on appeal.

. We further note that, if the life-insurance provision was properly considered part of a marital-property division, as the appellants argue, the domestic-relations court would have lost jurisdiction to modify that provision after 30 days. Dunn v. Dunn, 12 So.3d 704, 709 (Ala.Civ.App.2008). Additionally, “parties to a divorce decree may not change or modify the decree merely by an agreement between themselves.” Holland v. Holland, 406 So.2d 877, 879 (Ala.1981). Hence, any purported modification by the order entered on September 22, 1993, would have been ineffective.

. We note that, in Whitten, the supreme court did not have before it a case in which the deceased obligor had died leaving a substantial child-support arrearage, as has been alleged in this case. Nevertheless, we do not consider whether applying Whitten to this case thwarts the purpose of the life-insurance provision by leaving an arrearage unsecured. The appellants have not argued that point in their brief to this court. See Hood v. Hood, 72 So.3d 666, 677 (Ala.Civ.App.2011) ("Because the wife has not argued that issue on appeal, it is waived.”).

. We find the procedural posture of this case distinguishable from that of Turenne v. Turenne, 884 So.2d 844 (Ala.2003), in which the former husband brought an action against his former wife and several business entities controlled by her. The former husband in Tur-enne alleged contract and tort claims stemming from an alleged breach by the former wife of a settlement agreement that had been entered between the parties addressing how they would divide their various business interests in their divorce action; the parties’ settlement agreement had been incorporated and merged into their divorce judgment, which was entered by the Domestic Relations Division of the Montgomery Circuit Court. Id. at 847.
In Turenne, when both the domestic-relations division and the civil division dismissed the former husband’s claims, finding that they had been filed in an improper forum, the former husband appealed. Id. at 846. Our supreme court concluded that the former husband’s claims were properly heard in the domestic-relations division rather than in the civil division because the claims all arose from alleged breaches of the parties' property division as stated in a marital separation agreement, which had been merged into the divorce judgment entered by the domestic-relations division. Id. at 849. Our supreme court stated: "[Jjurisdiction of all matters arising from the divorce judgment, including the provisions of the marital settlement agreement, remains with the domestic relations division ... which, in a proper exercise of its jurisdiction, had entered a judgment divorcing [the parties].” Id.
We find no conflict between Turenne and our holding in this case. The parties and the issues raised in Turenne were unquestionably within the subject-matter jurisdiction of the Domestic Relations Division of the Montgomery Circuit Court. The domestic-relations division retained jurisdiction to enforce its judgment, which the former husband alleged had been breached. See, e.g., Rau v. Rau, supra; Pittman v. Pittman, supra; Ex parte Thomas, 54 So.3d at 362 n. 5; and Jardine v. Jardine, 918 So.2d 127, 131 (Ala.Civ.App.2005) ("[A] trial court has the inherent authority to interpret, implement, or enforce its own judgments.”). In this case, however, the life-insurance provision was included in the divorce judgment for the sole purpose of securing the former husband’s child-support obligation. Upon the domestic-relations court's determining that the child-support obligation had expired, that court had no further authority over the former husband's life-insurance policy or the proceeds of that policy. Whitten, supra.

. Based on our consolidation of appeal nos. 2101192 and 2110822, we deny Harold's motion to strike. Based on our resolution of the issues asserted in appeal no. 2110822, we deny Harold's motion for damages, filed pursuant to Rule 38, Ala. R.App. P.