Sherri Diane Hill and her husband C. David Hill separated in 1996. After the separation, the husband rented a house that the couple owned in Alabaster to Donna Martin, in November 1996, pursuant to an oral agreement. The husband and Martin signed a written lease agreement on August 1, 1997. The husband agreed to rent the house to Martin for $50 per month. The agreement further provided in an addendum that "Tenant may make improvements to property and submit receipts for materials/labor which will be applied toward rent at any time." The agreement also provided that "Tenant will be reimbursed for any repairs or maintenance made during the term of the lease that exceeds $300/month upon termination of the lease by either party."
Martin moved out of the house at the end of February 1998. The husband and wife divorced on March 20, 1998. In the divorce judgment, the husband and wife were ordered to sell the house and divide the proceeds. The property was sold and on December 15, 1998, the husband filed a motion to set a hearing on distribution of the proceeds from the sale. Martin moved to intervene, claiming a $7,407.68 materialman's lien on the property. At some point, Martin had apparently filed with the probate office the lease agreement, as evidence of the lien. However, Martin admits that no other documents were filed *Page 470 
with the lease. On January 27, 1999, Martin filed her claim for work, labor, and material.
At the hearing, the wife testified that she had not learned of the lease agreement and its provisions until the parties sold the house. Both the husband and the wife testified that the former tenants had paid $650 per month in rental payments. Although the wife attempted to ask questions concerning the husband's "relationship" with Martin and why he charged her only $50 per month, the trial court would not allow the questions.
Martin presented a handwritten document wherein she stated that she had installed an alarm system in the house, had installed carpeting in the entire house, and had installed a stove, a range, a dishwasher, and other things. In this document, she claimed that she had spent $10,789.06 in repairs and improvements in 1996 alone. However, she admitted that she had no receipts for those repairs or improvements made in 1996.
Martin did have receipts for repairs and improvements she had made in 1997, which she claimed totaled $3,505.59. However, the correct total for the items claimed in the receipts presented into evidence is $2,480.94. Also, in the total claimed by Martin, at least one of the receipts is added twice. Other receipts contain items that are obviously personal in nature, with no indication of which items Martin included in her claim. For example, one receipt from a Wal-Mart store includes air freshener, thread, and seven yards of fabric. Nowhere in Martin's list does she state that she added curtains or any other upholstery to the house so as to need thread or fabric. Another receipt is undated. Yet other receipts do not state which store they are from and have handwritten notation by Martin indicating that they were for "flowers." There is no indication whether these flowers were permanent additions to the home. Another receipt that Martin claimed was from Wal-Mart does not have the name "Wal-Mart" printed on the receipt, unlike the other Wal-Mart receipts she presented, nor does it state what items were purchased, unlike the other Wal-Mart receipts.
The wife's lawyer attempted to question Martin about some of these receipts; the trial court interrupted and asked, "Are we going to go through every item on every receipt?" The trial court then asked Martin if all the receipts were for repairs and improvements to the house and whether she had included anything that she had purchased for her personal use. Martin responded by stating that the receipts were for improvements and that she had not included any personal items. The wife's lawyer then stated: "Judge, I apologize. It's just that some of these are very, very hard to read and I think I at least owe that to my client." The judge responded: "If you can't read them, she probably can't either."
Two appraisals submitted into evidence indicated that the house had been appraised for $80,000 in 1993 and that on November 15, 1997, it was appraised for $94,000. However, this is irrelevant. The lease agreement stated that Martin was entitled to be reimbursed for repairs and improvements to the home based on receipts presented at the termination of the lease, and not on the appraised value of the house. Further, the appraisals gave no indication whether the property value had increased solely because of any repairs or improvements or had increased because the property is located within a 30-minute drive of downtown Birmingham, as is noted in one of the appraisals. Additionally, the house was sold for $85,000 — $9,000 less than the appraised value.
The $7,407.68 Martin claims against the proceeds of the sale of the house, based on a materialman's lien, is based on the $10,789.06 she claims she spent on repairs in 1996, plus $3,505.59 spent on repairs in 1997, less $300 for each month her repairs exceeded $300 — a total of $7,407.68. The trial court held that the materialman's lien *Page 471 
was valid and enforceable in the amount of $7,407.68. The wife appeals.
We agree with Martin's argument that the Cullman County Circuit Court, which heard the divorce case, maintained jurisdiction to hear the case because this case arose out of proceedings to divide the proceeds of the sale of property that occurred pursuant to a divorce judgment. A trial court has inherent power to enforce a division of property in accordance with a judgment of divorce. King v. King, 636 So.2d 1249
(Ala.Civ.App. 1994) (trial court had inherent authority to order that marital home be sold at public auction to enforce earlier judgment directing former spouses to sell home and divide proceeds equally); Shanks v. Shanks, 628 So.2d 927 (Ala.Civ.App. 1993) (trial court had inherent authority to make such orders as were necessary to enforce original judgment); Stidham v. Stidham,516 So.2d 686 (Ala.Civ.App. 1987) (trial court had authority to require payment of IRS lien on properties to effectuate earlier property division).
The wife argues that Martin failed to comply with the statutory requirements of § 35-11-213 and is therefore barred from asserting her lien. Martin argues that the wife is estopped from making this argument, because the divorce agreement stated that renovation costs were "evidenced by a materialman's lien." Martin construes this to mean that the wife cannot challenge the validity of the materialman's lien, only the amount of the lien. We disagree. The divorce agreement goes on to state that the wife "reserves the right to review and contest the application of the materialman's lien" to the property. This would include the right to challenge whether the lien was properly filed. Also, it would be unfair to estop the wife from making this argument, when Martin herself testified that she did not comply with the statute.
A materialman's lien comes into existence immediately when one provides any materials or performs labor upon the property, but it remains inchoate unless the statement of lien is timely filed pursuant to § 35-11-213 and unless an action is timely filed to perfect the materialman's lien, pursuant to §35-11-221. Metro Bank v. Henderson's Builders Supply Co.,613 So.2d 339 (Ala. 1993).
Section 35-11-213 requires any person entitled to such a lien to file with the probate office "a statement in writing, verified by the oath of the person claiming the lien, or of some other person having knowledge of the facts, containing the amount of the demand . . ., a description of the property . . ., and the name of the owner . . . . Unless such statement is so filed the lien shall be lost." By Martin's own testimony, she failed to comply with the statute she is now trying to enforce. Martin stated that she filed only the lease agreement as evidence of her lien. The wife's lawyer specifically asked Martin if she had ever recorded a lien statement. Martin replied: "No. It's my understanding that a lease agreement would protect my rights." Nowhere does the lease agreement state an amount owed, nor is there a verified statement, nor is the wife named in the lease agreement.
The purpose of § 35-11-213 is to place prospective purchasers and the owners' creditors on notice of the lien.Harper v. J C Trucking Excavating Co., 374 So.2d 886
(Ala.Civ.App. 1978), writ quashed, 374 So.2d 893 (Ala. 1979). Inherent in notice is a statement of the amount claimed against the property; such a statement is necessary so that one searching the title or checking indebtedness could learn the amount owed. The courts have applied a "substantial compliance" standard in determining whether the requirements of § 35-11-213 have been met. In Firestone v. Howell, 582 So.2d 1113 (Ala. 1991), the lien was held to substantially comply with the statute even though the lien was not signed by lienholder, but was signed by his attorney with the lienholder's authorization. In Harper, the verified lien statement was held to substantially *Page 472 
comply with § 35-11-213, where it stated the amount of the demand, a description of the property, and the name of the owner, even though it failed to allege that the facts contained therein were made on the affiant's personal knowledge. Nowhere in Martin's brief does she attempt to argue that the filing of the lease agreement "substantially complies" with the notice requirements of § 35-11-213.
Even if this court held that Martin had complied with §35-11-213, we would have to hold that she filed her complaint outside the period allowed by the statute of limitations for filing a materialman's lien, which is six months after maturity of the indebtedness. § 35-11-221. "More than likely, this will be the date of the last labor performed or the date materials were last furnished." Bailey Mortgage Co. v. Gobble-Fite Lumber Co.,565 So.2d 138, 143 (Ala. 1990). Although the date of the last labor performed is unclear in this case, Martin moved out of the rented house at the end of February 1998. Using February 28, 1998, as the date of the last labor performed, the last date for Martin to file her claim would have been August 28, 1998; she did not file her claim until January 27, 1999.
Martin next argues that she is entitled to an equitable lien because, she says, she improved the property by "$15,000 to $20,000, while incurring unreimbursed expenses in the amount of $7,407.68." We disagree. First, Martin did not raise the equitable-lien argument in the trial court. Appellate courts cannot consider arguments raised for the first time on appeal; rather, our review is limited to the evidence and arguments considered by the trial court. Andrews v. Merritt Oil Co.,612 So.2d 409, 410 (Ala. 1992).
Martin cites Benedict v. Little, 288 Ala. 638,264 So.2d 491 (1972), for the proposition that where a person improves the property of another, he is entitled to an equitable lien. However, an equitable lien arises when a person makes improvements on another's property as a result of fraud, duress, undue influence, or mistake. Id. In Woodson v. Harris, 615 So.2d 93
(Ala.Civ.App. 1992), this court held that a commercial tenant who had made improvements to the property, without an agreement by the owners to pay for such improvements, was not equitably entitled to reimbursement under a theory of unjust enrichment, absent a showing of fraud, duress, undue influence, or mistake. In the present case, the parties signed an agreement. Therefore, Martin is not entitled to an equitable lien.
Moreover, as indicated above, the evidence does not support Martin's contention that she incurred unreimbursed expenses of $7,407.68. We find it hard to believe that anyone seeking reimbursement for adding major appliances, an alarm system, and carpeting, etc., would not have kept receipts and would not have been able to obtain them. Although Martin contends that she gave some receipts to the husband and the husband contends that he no longer has them, and even though his testimony indicates that he used some of the receipts to claim deductions on his tax return, this does not absolve Martin from the burden of proving her case. Further, the receipts Martin does have contain several discrepancies, as noted above.
The judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result. *Page 473