HARWOOD, Justice.
This appeal arises from a second lawsuit involving Roger W. Turenne and Patti W. Turenne. The dispute concerns a marital settlement agreement, which was incorporated and merged into the parties’ divorce judgment. In the first lawsuit, Roger filed a motion for relief in the domestic relations division of the Montgomery Circuit Court, asserting that his former wife had not complied with some of the terms of their marital settlement agreement. On April 15, 2002, the domestic relations court entered an order; that order stated:
“The Court ... finds that the Domestic Relations Division is not the proper forum to hear the issues being complained of concerning the contractual obligations of the parties as [they] relate[ ] to the nursing home and retirement matters.[1]
*846 “For the foregoing reason, the requested actions by the parties in the Domestic Relations Division are hereby terminated and this file is closed.
“The parties may seek their relief through the Circuit Court of Montgomery County, Alabama.”
Roger did not appeal from this order.
On May 14, 2002, Roger W. Turenne, the Roger W. Turenne 2001 Revocable Trust, and Turenne PharMedCo, Inc. (hereinafter referred to collectively as “the plaintiffs”), sued Patti W. Turenne, individually and as trustee of the Patti W. Tur-enne Revocable Trust; Christopher R. Schmidt, Patti’s son, as trustee of the Patti W. Turenne Revocable Trust; Timothy W. Schmidt, Patti’s son, as trustee of the Patti W. Turenne Revocable Trust; Talladega Healthcare Center, Inc.; Albertville Healthcare Center, Inc.; Hillview Properties, LLC; as well as other fictitiously named defendants, on claims alleging in count I, fraudulent inducement; in count II, suppression of material facts; in count III, breach of contract against Patti Tur-enne; in count IV, breach of contract against Talladega Healthcare Center, Inc., Albertville Healthcare Center, Inc., and Hillview Properties, LLC; in count V, anticipatory breach of contract against Tal-ladega Healthcare Center, Inc., Albertville Healthcare Center, Inc., and Hillview Properties, LLC; and in count VI and count VTI, money due and owing.
Patti Turenne, Christopher Schmidt, Timothy Schmidt, Talladega Healthcare Center, Inc., Albertville Healthcare Center, Inc., and Hillview Properties, LLC, moved to dismiss counts I (fraudulent inducement), II (suppression of material facts), III (breach of contract as to Patti Turenne), and V (anticipatory breach of contract as to Talladega Healthcare Center, Inc., Albertville Healthcare Center, Inc., and Hillview Properties, LLC) because, they stated in their motion, “as a matter of law, these claims fail to state claims upon which relief can be granted.” The motion to dismiss also stated that those four claims “all stemfmed] from a Marital Settlement Agreement entered between [Roger Turenne] and Plaintiffs former wife, Defendant Patti Turenne.” The plaintiffs filed a response in opposition to the motion to dismiss. The circuit court granted the motion to dismiss, stating in relevant part:
“The Court finds that Counts I, II, III and V of Plaintiffs’ Complaint arise out of the Marital Settlement Agreement, and accordingly, the Court holds that it is without jurisdiction to adjudicate said claims, and that the appropriate court to hear such claims is the Domestic Relations Division of the Circuit Court of Montgomery County, Alabama.
“The Court hereby grants Defendants’ Motion and dismisses Counts I, II, III and V of Plaintiffs’ Complaint.
“With respect to the dismissal of Counts I, II, III and V, the Court hereby directs entry of a final judgment as to the dismissal of these claims, as the Court expressly determines that there is no just reason for delay and expressly directs the entry of judgment, as the Court finds that appellate review of this Order will expedite the ultimate resolution of the above-styled cause.”
The plaintiffs appeal, arguing that “the trial court erred in holding that it was without jurisdiction to adjudicate the claims stated in Counts I, II, III, and V of Plaintiffs’ Complaint.”
The standard of review for a motion to dismiss is well-settled.
*847 “ ‘The appropriate standard of review of a trial court’s [ruling on] a motion to dismiss is whether “when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief.” Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993); Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So.2d at 299. A “dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.” Nance, 622 So.2d at 299; Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).’
“Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala.2003).”
Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1017 (Ala.2003).
The record reveals that on December 12, 2001, Roger Turenne and Patti Turenne entered into a marital settlement agreement. On December 13, 2001, a final judgment of divorce was entered, divorcing Roger Turenne and Patti Turenne. The judgment stated, in pertinent part, that “the ‘Marital Settlement Agreement’ entered into between the parties on the 12 day of December, 2001, is hereby incorporated and merged into this Order, the same to be legally binding on both parties and enforceable by either.” The marital settlement agreement provided for a property division between Roger Turenne and Patti Turenne. Before their divorce, the couple jointly owned several businesses, including a medical-supply company and two nursing homes. Under the agreement, Roger received, among other things, PharMedCo, a pharmaceutical and medical-supply company, and Patti received the two nursing homes — Albertville Healthcare Center, Inc., and Talladega Healthcare Center, Inc. Hillview Properties, LLC, operates a nursing home under the name Hillview Terrace. According to the plaintiffs’ complaint, “Patti Turenne is a 60% member of Hillview Properties, and ... Chris Schmidt is a 40% member of Hillview Properties.” The marital settlement agreement did not purport to change the ownership of Hillview Properties.
Section 3.3(D) of the marital settlement agreement provided:
“Pursuant to the ‘Interim Settlement Agreement’[2] dated September 20, 2001, PharMedCo and Albertville Healthcare Center and Talladega Healthcare Center shall execute a pharmacy and medical supply agreement developed on terms and conditions satisfactory to both parties, but which shall provide generally for a term of 4 years, prudent buyer standards, and other customary terms and conditions for Albertville and Talladega. The contract will be for four (4) years *848 at Albertville Healthcare Center and Talladega Healthcare Center commencing effective as of the signing of the contracts. PharMedCo and Hillview Terrace Facility shall enter into an extension of the existing contract for an additional three years at Hillview Terrace Facility commencing effective from its current termination date. The contracts for Albertville, Talladega and the contract extension for Hillview will be signed not later than January 31, 2002. If not signed by that date, the court will be requested to resolve or appoint a mediator to resolve that issue. In the event of a change of control for PharMedCo, said change of control being defined as a fifty (50%) percent or more change in ownership, during the term of the Albertville and Talladega contracts, either party shall have the right to terminate such contract.”
The contracts between PharMedCo and Albertville Healthcare Center and Tallade-ga Healthcare Center, as well as the contract extension between PharMedCo and Hillview Properties, were not signed by January 31, 2002.
The plaintiffs argue on appeal that “the Civil Division of the Circuit Court of Montgomery County is the appropriate forum in which to litigate [their] claims.... ” They explain:
“The Domestic Court properly exercised its preference not to retain jurisdiction over the claims that are the subject of this appeal, as it recognized that those claims were in essence nothing more than a commercial dispute, and accordingly held that the Domestic Relations Division of the Circuit Court of Montgomery County was not the proper forum within which to litigate those claims. Therefore, the judgment of the trial court is due to be reversed.”
The judgment divorcing Roger and Patti specifically stated that “the ‘Marital Settlement Agreement’ entered into between the parties on the 12 day of December, 2001, is hereby incorporated and merged into this Order, the same to be legally binding on both parties and enforceable by either.” In Killen v. Akin, 519 So.2d 926, 930 (Ala.1988), this Court explained:
“‘The question whether a separation agreement or a property settlement is merged in the decree or survives as an independent agreement depends upon the intention of the parties and the court....’ East v. East, 395 So.2d 78 (Ala.Civ.App.1980), cert. denied, 395 So.2d 82 (Ala.1981). If there is an agreement between the parties and it is not merged or superseded by the judgment of the court, it remains a contract between the parties and may be enforced as any other contract. However, any part of the agreement that is merged into the judgment is subject to the equity power of the court and is no longer of a contractual nature. Oliver v. Oliver, 431 So.2d 1271, 1275 (Ala.Civ.App.1983); East v. East, supra.”
(Emphasis supplied.) The Court of Civil Appeals, in East v. East, 395 So.2d 78 (Ala.Civ.App.1980), stated that “if the entire [settlement] agreement became merged in the decree, only the decree and not the contract may be enforced, Horan v. Horan, 259 Ala. 117, 65 So.2d 486 (1953).” 395 So.2d at 80. Therefore, the Turennes’ marital settlement agreement is no longer an enforceable contract; it was subsumed by the divorce judgment.
Act No. 250, Ala. Acts 1959, effective October 1, 1959, created a family-relations division of the circuit court in counties having a certain range of population; Montgomery County was one of those *849 counties.[3] As amended, § 1 of Act No. 250 provides, in pertinent part:
“The family relations divisions of said court shall, as its primary function, handle all cases in such county involving divorces, annulments of marriages, custody and support of children, granting and enforcement of alimony, proceedings under the Reciprocal Non-Support Act, and all other domestic and marital matters over which the circuit court has jurisdiction.... All cases involving domestic and marital matters which originate in the circuit shall be assigned to the family relations division; however, if the docket of the family relations division is overcrowded a portion of such cases may be reassigned by the presiding judge of the circuit to other circuit judges of said court.”
In Ex parte Boykin, 611 So.2d 322, 326 (Ala.1992), this Court stated that the “[ejreation of a division within each circuit court to hear matters exclusive to that division means that only certain judges within a circuit court will decide those matters germane to a division.” In Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938), this Court stated:
“It is uniformly held that where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.”
See also Ex parte Liberty Nat’l Life Ins. Co., 631 So.2d 865, 867 (Ala.1993) (“The law is clear that the circuit court in which jurisdiction over a controversy is first invoked has exclusive jurisdiction over that controversy until that controversy is concluded, subject only to appellate review.”); Foster v. State Bank, 17 Ala. 672, 676 (1850)(“ ‘In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.’—Smith v. McIver, 9 Wheat. Rep. 532 [(1824)].”); and Hill v. Hill, 757 So.2d 468, 471 (Ala.Civ.App.2000) (“[Tjhe Cullman Circuit Court, which heard the divorce case, maintained jurisdiction to hear the case because this case arose out of proceedings to divide the proceeds of the sale of property that occurred pursuant to a divorce judgment.”). Therefore, jurisdiction of all matters arising from the divorce judgment, including the provisions of the marital settlement agreement, remains with the domestic relations division of the Montgomery Circuit Court, which, in a proper exercise of its jurisdiction, had entered a judgment divorcing Roger Turenne and Patti Turenne.
We note that there is no claim that can be enforced on a contract theory, i.e., count III (breach of contract) and count V (anticipatory breach of contract), because the settlement agreement was merged into the divorce judgment. See similarly Folmar & Assocs. LLP v. Holberg, 776 So.2d 112, 116 (Ala.2000) (“We decline to extend the cause of action for intentional interference with a contract or business relationship to reach claims of interference with a judgment of divorce.”). However, the fraud actions, i.e., count I (fraudulent inducement) and count II (suppression of material facts), are within the ancillary jurisdiction of the domestic relations division of the Montgomery Circuit Court.
Neither of the circuit court judges involved in these matters stated, in their orders, that their dismissals were “with prejudice.” The domestic relations division *850 of the circuit court stated that it was “not the proper forum to hear the issues being complained of,” and the circuit court stated that it was “without jurisdiction to adjudicate said claims.” Rule 41(b), Ala. R. Civ. P., provides:
“(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.”
(Emphasis supplied.) Thus, nothing in this opinion prevents Roger Turenne from refiling this action in the domestic relations court, and nothing prevents the domestic relations court from enforcing the divorce judgment it entered.
For the foregoing reasons, the trial court’s dismissal of counts I, II, III, and V of the complaint filed by the plaintiffs is due to be affirmed.
AFFIRMED.
SEE, BROWN, JOHNSTONE, and STUART, JJ., concur.

. The "nursing home and retirement matters” referred to in the order are apparently busi *846 ness matters related to the Turennes' ownership of nursing and retirement homes.

. The Interim Settlement Agreement provided that PharMedCo would continue to supply the nursing homes and stated, in relevant part:
"A Pharmacy and Medical Supply Agreement shall be developed on terms [and] conditions satisfactory to both parties but which shall provide generally for a term of 4 years, prudent buyer standards, and other customary terms and conditions for Albert-ville and Talladega. In the event of a change of control (50% or more) of ownership of PharMedCo during the term of the Albertville and Talladega contracts either party shall have the right to terminate such contracts.”

. Act No. 250 was amended by Act No. 1584, approved September 20, 1971, Ala. Acts 1971, and Act No. 1664, effective September 1, 1971, Ala. Acts 1971.