THOMPSON, Presiding Judge.
Renasant Bank (“Renasant”) petitions this court for a writ of mandamus directing the Domestic Relations Division of the Jef-ferson Circuit Court (“the divorce court”) to dismiss Renasant as- a party in the underlying action.
Monica Graham (“Monica”) and James M. Graham III (“James”) were divorced by.an April 2003 judgment of the divorce court entered in case number DR-02-1501. The 2003 divorce judgment is not contained in the materials submitted in support of this petition. However, it is undisputed that the divorce judgment, which incorporated a settlement agreement reached by the parties, provided, among other things, that Monica and James were awarded joint title to their former marital home, with Monica receiving possession of the home and James being' responsible for the mortgage-indebtedness payments on the home. According to allegations made in a pleading submitted as an exhibit to Renasant’s petition, the divorce judgment provided that Monica and James were to *1136 sell the former marital home when their youngest child graduated from high school and to evenly divide the net proceeds of that sale. In addition, the divorce judgment provided that James coulpl refinance the mortgage indebtedness on. the former marital home with Monica’s cooperation.
On February 7, 2011, James obtained from -Renasant a home-equity line of credit in the amount of $265,939.73 that was secured by a mortgage on the former marital home. In the documents he executed in order to obtain that line of credit, James represented that he owned the former marital home in fee simple and that he had possession of the property. A pleading filed by Renasant indicates that $231,624.88 of the proceeds from the line of-credit were used to-repay an existing mortgage on the former marital home. James received the remaining $34,314.85 from the transaction.
On January- 28, 2013, Monica commenced an action against Renasant in the Jefferson Circuit Court, alleging claims of negligence, wantonness, fraud, and slander of title with regard to its execution.of the February 7, 2011, equity line, of credit and mortgage (hereinafter referred to collectively as “the mortgage”). For the purposes of this opinion, we refer to the court in which that civil action was considered as “the trial court in the civil action.” The trial court in the civil action assigned Monica’s civil' action against Renasant case number CV-13-900310, which is hereinafter referred to as “the civil action.” Monica later also asserted claims against James in the civil action. Renasant answered and counterclaimed against Monica, seeking the establishment of an equitable lien or a constructive trust placed against the former marital home and asserting a claim of unjust enrichment.
In the civil action, Renasant also filed a third-party complaint against James,, alleging breach of warranty. The third-party complaint filed in the civil action is not contained in the materials submitted to this court; rather, Renasant submitted a copy of its third amended counterclaim, dated May 29, 2013. On July 30, 2013, James answered the third-party complaint and counterclaimed against Renasant, alleging a number of claims, including breach of fiduciary duty, negligence, negligence per se, slander of title, breach of contract, intentional interference with a contractual relationship, breach of loyalty and fair dealing, wantonness, and various fraud claims. James’s claims were based, in essence, on his representation that he showed Renasant employees the’divorce judgment and that Renasant should have interpreted the divorce judgment as not allowing him to enter into the mortgage transaction.
On September 26, 2014, the trial court in the civil action entered a partial summary judgment in favor of Renasant on James’s claims against Renasant. The September 26, 2014, partial-summary-judgment order specifically noted that it was a nonfinal order because other claims of the parties to that action remained pending.[1] James filed a notice of appeal from that order. The appeal was assigned appeal number 2140127, and on March 31, 2015, this court dismissed that appeal on the basis that it had been taken from a nonfinal order.[2] James petitioned our supreme court for a writ of certiorari, and our supreme court denied that petition; *1137 Ex parte Graham (No. 1140741, May 15, 2015), — So.3d - (Ala.2015). (table). This court’s certificate of judgment in appeal number 2140127 was issued on May 15,2015.
The materials submitted to this court indicate that James filed in the divorce court a petition to modify the orders entered in the divorcé action and a petition fór a rule nisi against Monica; that action, the underlying action, was assigned case number DR-02-1501.03 and is hereinafter referred to as “the domestic-relations action.” Renasant has failed to submit to this court materials indicating the date on which James filed those claims against Monica in’ the domestic-relations action. However, James’s pleadings allege that Monica filed a counterclaim in the domestic-relations action alleging that she had been damaged as a result of the transaction in which James obtained the mortgage.
On February 16, 2015, five months after the trial court in the civil action had entered a summary judgment on James’s claims against Renasant in that action and one month before this court dismissed the appeal of the September 26, 2014, partial summary judgment on the basis that it had been taken from a nonfinal order, James filed in the divorce court a motion seeking permission to add Renasant as a third-party defendant in the domestic-relations action, James attached to that motion a third-party, complaint that is substantially identical to the counterclaim that he had filed, against Renasant in the civil action, and he again asserted the. various fraud claims- and claims of breach of fiduciary duty, negligence, negligence per se, slander of title, breach- of contract, intentional interference with a contractual-relationship, breach of loyalty and fair dealing, and wantonness that he had asserted against Renasant in the civil action. In his February 16, 2015, third-party complaint filed in ' the domestic-relations action, James alleged:
“As set forth in [James’s] pétitioh to modify and petition for rule nisi, and as further confirmed in [Monica’s] responsive pleadings, these same damages are alleged to be at issue by and between these three (3) parties in [the civil action,] as it is currently pendirig before [the trial court in the civil action], and is also now postured in part before the Court of Civil Appeals [in appeal number] 2140127.”
Also in that third-party complaint filed in the domestic-relations action, James alleged that, in an-earlier action seeking a modification of the divorce judgment, Mo *1138 nica had been made aware of the February 7, 2011, mortgage transaction.
Renasant filed in the divorce court a response in opposition to James’s motion to add it as a third-party defendant. On March 17, 20Í5, the divorce court entered an order in the domestic-relations action finding that it had .jurisdiction over James’s claims- against- Renasant and adding Renasant as a third-party defendant to the domestic-relations action between James and Monica. On March 25, 2015, Renasant filed a motion asking the divorce court to reconsider its March 17, 201,5, order. It does not appear that the divorce court entered an order in response to that motion to reconsider. Regardless, Rena-sant timely filed its petition for a writ of mandamus asking this court to order the divorce court to vacate its March 17, 2015, order.
«1 “A writ of mandamus is an extraordinary remedy, and it ‘will - be issued only when there is: 1) a clear legal right in the petitioner to the order sought;. 2) an imperative duty upon the respondent, to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ ” ’
“Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).”
Ex parte Dean, 137 So.3d 341, 344 (Ala.Civ.App.2013).
Renasant asserts before this court a number of arguments to the general effect that the divorce court erred in determining that it had jurisdiction to consider James’s claims against Renasant. Renasant argues before this court that those tort and contract claims raised by James were not related to the terms of the settlement agreement incorporated into the judgment that divorced James and Monica- and, therefore, that the divorce court could not exercise jurisdiction over those claims. James contends in his response filed in this court that, because the February 7, 2011, mortgage transaction pertained to the former marital home, any dispute concerning the mortgage transaction should be resolved in the divorce court.
In reaching its March 17, 2015, ruling, the divorce court relied on Turenne v. Turenne, 884 So.2d 844 (Ala.2003). In that case, the divorce judgment entered by the Domestic Relations Division of the Montgomery Circuit Court (“the, Montgomery divorce court”) incorporated a settlement agreement reached by the parties, who had-jointly owned a number of businesses; the judgment awarded the former wife in that case two nursing homes and it awarded the former husband a pharmacy. As part of the séttlement agreement incorporated into the divorce judgment, the parties specified that the nursing homes awarded to the former wife- would have certain business dealings with the pharmacy awarded to the former husband. The former husband commenced an action in the Montgomery .divorce court, arguing that the wife had failed to comply with the provisions of the divorce judgment governing the interaction between the parties’ businesses. The Montgomery divorce court entered an order dismissing the action based on a finding that it lacked jurisdiction to consider the action. Turenne, 884 So.2d at 846-47. Rather than appeal the, Montgomery divorce court’s decision, the former husband in that case commenced a civil action against the former wife in the' Civil Division of the Montgomery Circuit Court (“the Montgomery trial court”), alleging,. .among other things, a number of fraud and breach-of-contract claims. The Montgomery trial court dismissed those claims and certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ., .P, Turenne, 884 So.2d at 847.
*1139 In Turenne, supra, this court stated that a contractual agreement such as- the settlement agreement executed by the parties and merged into a divorce judgment in that case could be enforced in the same manner that a judgment could be enforced but that the-settlement agreement could not provide a basis for an action premised on a claim of breach of contract. The court explained:
“ ‘ “The question whether a separation agreement or a property settlement is-merged in the [divorce judgment] or survives as an independent agreement depends upon the intention of the parties and the court....” East v. East, 395 So.2d 78 (Ala.Civ.App.1980), cert. denied, 395 So.2d 82 (Ala.1981). If there is an agreement between the parties and it is not merged or superseded by the judgment of the court, it remains a contract between the parties and may be enforced as any other contract. However, any part of the agreement that is merged into the judgment is subject to the equity power.of the court and is no longer of a contractual nature. Oliver v. Oliver, 431 So.2d 1271, 1275 (Ala.Civ.App.1983); East v. East, supra.
“(Emphasis supplied.) The Court of Civil Appeals, in East v. East, 395 So.2d 78 (Ala.Civ.App.1980), stated that ‘if the entire [settlement] agreement 'became merged in the [divorce judgment], only the [divorce judgment] and not the contract may be enforced, Horan v. Horan, 259 Ala. 117, 65 So.2d 486 (1953).’ 395 So.2d at 80. Therefore, the Turennes’ marital settlement agreement is no longer an enforceable contract; it was subsumed by the divorce judgment.”
Turenne, 884 So.2d at 848. In reaching its holding, this court noted that the Montgomery divorce court and the Montgomery trial court, as divisions of the Montgomery Circuit Court, shared concurrent jurisdiction and that
“ ‘[i]t is uniformly held that where two or moré courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to.-the final determination of the action and the enforcement of its judgments or decrees.’ ” .
Turenne, 884 So.2d at 849 (quoting Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938)).
Other cases have addressed the issue whether portions of a settlement agreement are merged into a divorce judgment. In Hill v. Hill, 757 So.2d 468 (Ala.Civ.App.2000), the parties’ divorce judgment ordered certain property sold and the proceeds divided, and a tenant on that property asserted a' materialman’s lien. This court held, among bther things, that the court that had considered the divorce action was the appropriate court to consider that claim, expláining that that court “maintained jurisdiction to hear the case because th[e] cáse arose, out of proceedings to divide the proceeds of the sale of property that occurred pursuant to [the] divorce judgment.” Hill v. Hill, 757 So.2d at 471.
In other cases, our courts have held that the dispute was not related to an agreement incorporated into the' divorce judgment and, therefore, that the court that resolved the divorce action did not have jurisdiction. In Hill v. Hill, 89 So.3d 116 (Ala.Civ.App.2010),[3] Leroy Hill and Bonnie *1140 Hill were divorced by a judgment. that incorporated a settlement agreement they had reached, but that judgment was held not to have incorporated another agreement between the parties pertaining to their children inheriting certain property from Leroy. This court held that, because there was no evidence indicating that the inheritance agreement had merged into the divorce judgment, the inheritance agreement could not be enforced in the court that divorced Leroy and Bonnie. Hill v. Hill, 89 So.3d at 120. Similarly, in Stroeker v. Harold, 111 So.3d 138 (Ala.Civ.App.2012), this court held that the parties’ divorce judgment required that a life-insurance policy was to be maintained for the benefit of the parties’ children during their minority and that, because the children were no longer minors at the time of the insured parent’s death, the domestic-relations court lacked jurisdiction over the life-insurance proceeds.
Thus, whether a trial court in a domestic-relations action may address a dispute is a factual question dependent on whether an agreement is merged into the divorce judgment itself. See Turenne v. Turenne, supra; Hill v. Hill, 89 So.3d 116; and Stroeker v. Harold, supra. In the matter currently before this court, Monica and Jamés’s settlement agreement, incorporated into their divorce judgment, provided that Monica and James would hold a joint interest in the former marital home, that James would make the mortgage payments on the former marital home, that James could refinance the mortgage indebtedness with Monica’s cooperation, and that Monica and James would evenly divide the net proceeds of the eventual sale of the former marital home. The February 7, 2011, mortgage transaction at issue arguably involved more than a refinancing of the previous mortgage because it is clear that James received approximately $34,000 in excess of the amount necessary to refinance the mortgage, and there is no dispute that Monica was unaware of the transaction at the time that it was entered into. Thus, the transaction affected the equity rights of Monica and James in the former marital home because the $34,000 in additional funds received solely by James as a result of the February 7, 2011, mortgage transaction serves to reduce their shared equity in the former marital home. The divorce court would continue to have jurisdiction to address the issue whether, as between Monica and James, a modification order should be entered to rebalance Monica’s and James’s respective equities in the former marital home.
However, in Turenne, supra, our supreme court held that a court such as the divorce court would maintain jurisdiction of matters “arising from the divorce judgment,,” 884 So.2d at 849 (emphasis added). Turenne is distinguishable from this case because in Turenne all of the claims arose from alleged breaches of the separation agreement that was incorporated into the divorce judgment. See also Hill v. Hill, 757 So.2d at 471 (The Montgomery divorce court maintained jurisdiction because the dispute arose from a court-ordered sale of the property.).
In this case, however, the claims James seeks to litigate in the divorce court pertain to his claim that Renasant was at fault in allowing him to enter into the February 7, 2011, mortgage transaction. James’s claims against Renasant do not seek to enforce any part of the divorce judgment. Further, James’s claims against Renasant that he seeks to reliti-gate in the divorce court do not arise from any alleged breach of the settlement agreement or the divorce judgment (or any judgment modifying the divorce judgment). The divorce judgment provided that the mortgage indebtedness on the former marital home could be refinanced. However, it cannot be said that the settle- *1141 merit agreement incorporated into the divorce judgment contained provisions anticipating litigation of the type of tort, contract, and equitable claims at issue between James and Renasant. Further, the settlement agreement incorporated into, the divorce judgment did not contain provisions indicating that any tort, contract, or equitable claims against or by a third party pertaining to the refinancing transaction should be considered as a part of the domestic-relations action. Given the foregoing, we conclude that the' divorce court erred in determining that James’s claims against Renasant arose from the divorce judgment, see Turenne v. Turenne, 884 So.2d at 849, such" that it could exercise jurisdiction over James’s claims against Renasant.
Even assuming, however, that the divorce court could exercise that jurisdiction and that the divorce court shared concurrent jurisdiction with the trial court in the civil action, under the facts of this case we conclude James submitted to the jurisdiction of the trial court, in the civil action.
“The circuit courts of Alabama have concurrent jurisdiction of all matters. Ala. Const. Art. 6, § 142. However, when jurisdiction of a circuit court has first attached that court has the exclusive right to continue to a final determination of the causes. Clements v. Barber, 49 Ala.App. 266, 270 So.2d 815 (1972); Ex parte Burch, 236 Ala. 662, 184 So. 694 (1938). Another court may be restrained from assumption of jurisdiction, English v. Macon, 46 Ala.App. 81, 238 So.2d 733 (1970). Unless there is objection, even though one court has assumed jurisdiction of a matter, another court with concurrent authority may act in the same matter. Tittle v. Holt, 252 Ala. 388, 41 So.2d 203 (1949). The answer and waiver amounted to submission to the jurisdiction of the Autauga court.” . .
Sheffield v. Sheffield, 350 So.2d 1056, 1057-58 (Ala.Civ.App.1977) (emphasis added).
We note that, in their briefs submitted to this court, the parties also argue regarding the application of § 6-5-440, Ala. Code 1975, to the facts of this case. That section provides:
“No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pen-dency of the former is a good defense to the latter if commenced at different times.”
Our supreme court has explained:
“This statutory, directive means that “where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees;’ Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938).”
Regions Bank v. Reed, 60 So.3d 868, 884 (Ala.2010). See also Ex parte The Boys & Girls Clubs of South Alabama, Inc., 163 So.3d 1007, 1014 (Ala.2014) (holding that the trial court that first takes cognizance of a cause is the court that should exercise jurisdiction over the matter).
In this case, we have held that the divorce court could not properly exercise jurisdiction, so there is no concurrent jurisdiction between that court and the trial court in the civil action. Even assuming, however, that .the divorce court could properly exercise jurisdiction over James’s *1142 claims, § 6-5-440 does not support an argument that, under these facts, James’s claims could be timely asserted in that court. James filed his claims against Re-nasant in the divorce court on February 16, 2015, well after the trial court in the civil action had entered its September 26, 2014, partial-summary-judgment order resolving those same claims, asserted in the civil action, On the merits. 'Thus, the trial court in the civil action first had cognizance of the tort and contract claims at issue.
We grant the petition for a writ of mandamus. The divorce court is directed to enter an order dismissing Renasant as a party to the domestic-relations action.
PETITION GRANTED; WRIT ISSUED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. In its petition for a writ of mandamus, Re-nasant argues that the claims James asserted *1137 in the underlying action are barred by the doctrine of res judicata, because, it says, the September 26, 2014, partial summary judgment resolved James’s identical claims in the civil action in favor of Renasant. In order for James's claims in the underlying action to be barred by the doctrine of res judicata, there must have been a prior judgment on die merits entered by a court of competent jurisdiction, with the same cause of action presented and substantial identity of the parties. Webb v. City of Demopolis, 14 So.3d 887, 894 (Ala.Civ.App.2008) (quoting Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990)). The September 26, 2014, order entered in the civil action on James’s claims against Renasant was a partial summary judgment and, therefore, was not a final judgment. The trial court in the civil action did not certify that order as final pursuant to Rule 54(b), Ala. R. Civ. P. " ‘[A]n order granting partial summary judgment is interlocutory; it has. no res judi-cata or collateral estoppel effect.’ ” Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 67 (Ala.2001) (quoting Golman v. Tesoro Drilling Corp., 700 F.2d 249, 253 (5th Cir.1983), citing in turn Travelers Indem. Co. v. Erickson's, Inc., 396 F.2d 134, 136 (5th Cir.1968)). The September 26, 2014, partial summary judgment, by virtue of its not being a final judgment on the merits, could not bar James’s cláims in the underlying action on the theory of res judicata.

. The parties in this case are not the same as those in Hill v. Hill, 757 So.2d 468 (Ala.Civ.App.2000).